## ABRAHAM et al. v. WICHITA PETROLEUM CO. et al.

### No. 5971.

Circuit Court of Appeals, Fifth Circuit.

June 12, 1931.

Rehearing Denied July 20, 1931.

T. R. Boone and J. A. Lantz, both of Wichita Falls, Tex. (J. R. Wilson, of Wichita Falls, Tex., on the brief), for appellants.

Conard E. Cooper, of Tulsa, Okl., and Tarlton Morrow and Geo. L. Kelly, both of Wichita Falls, Tex., for appellees.

Before FOSTER, Circuit Judge, and HUTCHESON and SIBLEY, District Judges.

FOSTER, Circuit Judge.

This suit was originally brought by appellants in a state court against six corporations, including the Wichita Petroleum Company and the National Petroleum & Refining Company, and was removed to the District Court. Later on, the Turman Oil Company, having acquired certain rights from the Wichita Petroleum Company pendente lite, was made a party defendant. By dismissal and a consent judgment, four of the original defendants passed out of the case, while it was pending in the state court, leaving the final decision between appellants, Earl Abraham and the Petroleum Development Company, and appellees, the Wichita Petroleum Company, the Turman Oil Company, and

the National Petroleum and Refining Company.

The pleadings are voluminous, taking up about 129 pages of the printed record, but the issues may be briefly stated.

In 1868 a tract of land in Wichita county, known as survey No. 820 and containing 960 acres, was patented to the heirs of Lewis Powell by the state of Texas. By two deeds, dated respectively July 15, 1889, and December 1, 1900, T. P. Roberts acquired part of this tract from Herm. Specht. The deeds described the land by metes and bounds and respectively purported to convey 348 and 160 acres, a total of 508 acres. The patent and deeds to Roberts referred to the south bank of Red river as the northern boundary. In 1918 oil was discovered in the vicinity, at Burkburnett. In December, 1918, one Sam Sparks made a mineral filing and obtained a permit from the state of Texas to prospect for oil between the northern line of the Lewis Powell survey and the south bank of Red river. In February, 1919, Roberts had made and filed of record a plat of his property, designating it as the T. P. Roberts subdivision of the northern 514 acres of the Lewis Powell survey No. 820. The plat divided the property into eight blocks, running between parallel lines due north and south, and numbered from 1 to 8, with varying acreage. The northern boundary shown on the plat is a straight line, running at an angle of approximately 65 degrees, connecting the eastern and western boundaries. This plat did not show the river nor mention it as the northern boundary, did not show the starting points of the boundaries nor give any data by which it could be located on the ground. After filing the plat of record, Roberts entered into an oil and gas lease, on November 19, 1919, with the Petroleum Development Company for the northern 20 acres of block No. 8. According to the plat, block No. 8 contained 123.7 acres. This lease was acquired by Abraham before the institution of the suit. There was left between the northern boundary of Roberts' subdivision, as shown by the plat, and the south bank of Red river, a strip approximately 100 feet wide. Roberts, in connection with others, executed oil leases to this strip and they were acquired by the Wichita Petroleum Company, the National Petroleum & Refining Company, and the General Oil Company. The rights of Sparks were also acquired by the General Oil Company, and subsequently the National Petroleum & Refining Company acquired the rights of the General Oil Company. By virtue of these leases three oil wells, which may be designated as Nos. 169, 170, and 172, were drilled and developed on the strip. The strip was part of the disputed territory involved in the boundary suit between Oklahoma and Texas, filed in the Supreme Court of the United States in 1920. See 252 U. S. 372, 40 S. Ct. 353, 64 L. Ed. 619; 253 U. S. 465, 40 S. Ct. 580, 64 L. Ed. 1015; 40 S. Ct. 582; 256 U. S. 70, 41 S. Ct. 420, 65 L. Ed. 831; 256 U. S. 602, 41 S. Ct. 539, 65 L. Ed. 1115. In that case a receiver was appointed and all parties claiming any interest in the lands or wells thereon were allowed to intervene. Appellees or their officers or agents intervened and appellants did not. Eventually, the possession of the wells was turned over to appellees by the federal receiver. Appellants delayed some eight years after the notorious possession of appellees before filing suit. In the meantime Roberts had died and was not available as a witness on the trial. These facts are apparently undisputed.

Appellants' cause of action is based on the assumption that its title to the 20 acres of land out of block No. 8 extended to the Red river as its northern boundary. Their petition alleged trespass by appellees and the conversion of the oil taken from the wells. The prayer was for a judgment for possession of the land and for damages for the oil extracted. The fixing of these damages, under the allegations of the petition, would necessarily involve an accounting.

Appellees pleaded not guilty to the trespass, set up title in themselves, and alleged that the claim of appellants constituted a cloud upon their title. They also set up estoppel, based principally on the proceedings in the Supreme Court and delay in filing suit, and pleaded the statute of limitations of three years. Their prayer was for removal of the cloud upon their title and a judgment quieting them in their possession.

The case is somewhat complicated. Notwithstanding the equitable action for accounting shown, it was brought at law, equitable defenses were raised by the answers, and the defendants prayed for equitable relief. It appears, however, that on motion of the defendants, to which plaintiffs did not object, the case was transferred to the equity side, and it was also stipulated that the

jury be waived and any questions of law arising should be determined by the judge. In this situation we think we may consider the case on the record, without regard to technical errors and defects therein appearing not affecting the rights of the parties. Section 269, Judicial Code (28 USCA § 391). It is unnecessary to consider the assignments of error in detail.

The case presents purely a question of fact. There were no motions for judgment on either side; the court declined to make special findings of facts and entered a judgment equivalent to a general verdict. The court heard the witnesses in open court and, as appears by a memorandum opinion in the record, reached the conclusion that appellants had failed to establish that their lines ran to the river as the northern boundary of the land and that they had in fact received all they bought and paid for. He therefore dismissed the suit as to plaintiffs. He also held against defendants on their cross-action and declined to enter a judgment quieting their title. As to this appellees are not complaining as they have not taken a cross appeal.

There was considerable conflict in the testimony and it would be useless to review it extensively. While the patent and the deeds to Roberts' property mention the river, three surveyors who testified were unable to agree in fixing the northern corners of either the patent, deeds, or plat. However, all of them agreed that the corners were considerably south of the river bank. Based on a clear preponderance of the evidence, there is no doubt that the northern boundary of the subdivision plat neither conforms to the river nor the northern line of the patent. From a preponderance of the evidence, the presumption is very strong that while Roberts considered the river to be his northern boundary, he deliberately excluded it in making the plat and that he had no intention of conveying to appellants any more than 20 acres as shown by the plat. If appellants had leased the whole of block No. 8, their contention would be stronger; but as the block contained over 123 acres, it was very easy to carve out the northern 20 acres without the necessity of extending it to the river.

We think the conclusion reached by the District Court is supported by a clear preponderance of the evidence before him, and that the judgment appealed from must be affirmed.